**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KELLY ROGERS, KATHRYN DEISINGER O'FLAHERTY, and WYNDAHM HASLER, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 24-cv-8864 |
| v. | District Judge LaShonda A. Hunt |
| ADVOCATE AURORA HEALTH, INC., the COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF ADVOCATE AURORA HEALTH, INC., and the ADVOCATE AURORA HEALTH , INC. NON-CHURCH BENEFIT PLAN ADMINISTRATIVE COMMITTEE, | |
| Defendants. | |

**DEFENDANT ADVOCATE AURORA HEALTH, INC.'S OPPOSED**
**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND.................................................................................................2

ARGUMENT .........................................................................................................................5

I.      THE COMPLAINT FAILS TO ESTABLISH ARTICLE III STANDING ......................5

      A.      The complaint does not establish Article III standing (Counts I-III)......................6

      B.      Plaintiffs lack standing to pursue the purely disclosure-related component of Count II..........................................................................................................7

II.     PLAINTIFFS' CLAIMS FAIL FOR LACK OF EXHAUSTION AND ON THE MERITS ..........................................................................................................................9

      A.      Plaintiffs failed to exhaust their administrative remedies (Counts I-III) ................9

      B.      On the merits, the Wellness Program complies with ERISA (Counts I-III)..........11

      C.      Plaintiffs' fiduciary duty claim (Count III) fails for other reasons .......................15

      D.      The DOL regulations, insofar as they require participation rewards for Plan participants who continue to smoke, do not faithfully implement ERISA and therefore cannot predicate viable ERISA claims...............................19

CONCLUSION....................................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ..................................................................................................9

*Bank of Am., N.A. v. Knight*,
　725 F.3d 815 (7th Cir. 2013) ..................................................................................20

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ..................................................................................................9

*Boucher v. Williams*,
　13 F. Supp. 2d 84 (D. Me. 1998) ............................................................................17

*Fin. Fiduciaries, LLC v. Gannett Co.*,
　46 F.4th 654 (7th Cir. 2022) ....................................................................................4

*Hammer v. Johnson Senior Living Ctr.*,
　2020 WL 7029160 (W.D. Va. Nov. 30, 2020) ........................................................18

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
　2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ..............................................................4

*Johnson v. U.S. Off. of Personnel Mgmt.*,
　783 F.3d 655 (7th Cir. 2015) ....................................................................................6

*Knigge v. Dorothy Prusek, 401(k) Plan*,
　2015 WL 1397088 (N.D. Ill. Mar. 24, 2015) ..........................................................10

*Kross v. W. Elec. Co.*,
　701 F.2d 1238 (7th Cir. 1983) ..................................................................................9

*Lockheed Corp. v. Spink*,
　517 U.S. 882 (1996) ................................................................................................16

*Loper Bright Enters. v. Raimondo*,
　603 U.S. 369 (2024) ................................................................................................19

*Lujan v. Defenders of Wildlife*,
　504 U.S. 555 (1992) ..............................................................................................6, 7

*McGath v. Auto-Body North Shore, Inc.*,
　7 F.3d 665 (7th Cir. 1993) ......................................................................................16

*McGinnis v. Costco Wholesale Corp. Emp. Benefits Program*,
  2021 WL 4844094 (N.D. Ill. Oct. 18, 2021) ........................................................................ 10

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ........................................................................................................ 16

*Phelps v. C.T. Enters.*,
  194 F. App'x 120 (4th Cir. 2006) ..................................................................................... 18

*Sec'y of Labor v. Macy's, Inc.*,
  2022 WL 407238 (S.D. Ohio Feb. 10, 2022) ............................................................... 17, 19

*Secretary of Labor v. Macy's, Inc.*,
  2021 WL 5359769 (S.D. Ohio Nov. 17, 2021) .................................................................. 17

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*,
  578 F.3d 505 (7th Cir. 2009) ............................................................................................ 19

*Smith v. BCBS of Wis.*,
  959 F.2d 655 (7th Cir. 1992) ............................................................................................ 10

*Taha v. Int'l Bhd. of Teamsters, Local 781*,
  947 F.3d 464 (7th Cir. 2020) ............................................................................................ 15

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020) ...................................................................................................... 5, 8

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ....................................................................................................6, 8, 9

*Williamson v. Curran*,
  714 F.3d 432 (7th Cir. 2013) .............................................................................................. 2

*Zhou v. Guardian Life Ins. Co. of Am.*,
  295 F.3d 677 (7th Cir. 2002) ............................................................................................. 9

iii

## STATUTES

26 U.S.C. § 125 .................................................................................................2, 18

29 U.S.C.
   § 1002(1) ......................................................................................................2
   § 1002(21)(A) .............................................................................................16
   § 1109 ...................................................................................................18, 19
   § 1109(a) ....................................................................................................19
   § 1132(a)(2) ..........................................................................................18, 19
   § 1182(b)(1) ................................................................................................11
   § 1182(b)(2) ..........................................................................................19, 20
   § 1182(b)(2)(B) ...........................................................................................11

## REGULATIONS

29 C.F.R.
   § 2509.75-8 .................................................................................................17
   § 2590.702(f)(4) .........................................................................................19
   § 2590.702(f)(4)(i) ................................................................................12, 13
   § 2590.702(f)(4)(i)-(v) ...............................................................................11
   § 2590.702(f)(4)(iv) .............................................................................11, 12
   § 2590.702(f)(4)(v) ......................................................................................8

## OTHER AUTHORITIES

*FAQs About Affordable Care Act Implementation (Part XVIII) & Mental Health
   Parity Implementation* (Jan. 9, 2014) ...............................................12, 13

Labor Tech. Release 92-01, *DOL Enforcement Policy for Welfare Plans with
   Participant Contributions* (May 28, 1992) ...................................................18

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Advocate Aurora Health, Inc. ("Advocate")[1] moves to dismiss the Second Amended Complaint (Dkt. 26).

## INTRODUCTION

Advocate is a non-profit integrated health system that employs thousands of doctors, nurses, and health care workers. Advocate sponsors the Advocate Aurora Health Welfare Plan ("Plan"), which provides health and welfare benefits to eligible Advocate employees. One component of the Plan is the Healthy Living Wellness Program. A component of that Program is the Tobacco Cessation Wellness Program ("Wellness Program"), which encourages Plan participants to become tobacco-free and imposes a premium surcharge on those who use tobacco. Consistent with the Employee Retirement Income Security Act of 1974 ("ERISA"), Advocate provides participants who use tobacco with a reasonable alternative to avoid the tobacco surcharge for the entire plan year—by enrolling in a tobacco cessation program in early January and completing it. The law does not require Advocate to offer anything more.

Plaintiffs are now on their third attempt to state a viable claim against Advocate, and they still fail to do so. As threshold matters, Plaintiffs do not allege a basis for Article III standing and did not exhaust their administrative remedies before filing suit. On the merits, Plaintiffs rely on two faulty premises to allege that the Wellness Program violates ERISA. First, Plaintiffs complain that Plan participants who enroll in a tobacco cessation program *after* January do not avoid the tobacco surcharge for the months *preceding* their enrollment—for example, a participant who enrolls in April does not get reimbursed for the surcharge paid in January, February, and March.

---

[1] The Second Amended Complaint names two new defendants, but those defendants have not been served, so this motion is filed solely on behalf of Advocate. That said, the grounds for dismissal set forth herein apply with equal force to the unserved defendants.

That challenge rests on the incorrect premise that ERISA requires retroactive reimbursement of the surcharge for employees who enroll mid-year. It does not. Second, and without providing any standard or connecting a single allegation to their own experiences, Plaintiffs claim that the Wellness Program violates ERISA because it is unreasonably strict. Plaintiffs' conclusory allegations along those lines are insufficient to state a claim.

For these and other reasons, this case should be dismissed with prejudice.

## FACTUAL BACKGROUND

The Plan is an employee welfare benefit plan under 29 U.S.C. § 1002(1) and a cafeteria plan under 26 U.S.C. § 125. *See* Advocate Aurora Health Welfare Plan (as amended and restated, eff. Jan. 1, 2020) ("Plan") (Exh. A), at § 1.2 (the Plan is designed to "meet the requirements of a cafeteria plan under [Internal Revenue] Code Section 125"), Art. 6 (Wellness Program Provisions), Appx. B (listing "Participating Programs" incorporated into the Plan); Advocate Health Care Network Welfare Benefits Plan (as amended and restated, eff. Jan. 1, 2018) (also "Plan") (Exh. B), at § 1.2, Art. 6, Appx. B.[2] Plan participants include Advocate employees who choose among various health and welfare benefits and pay for certain benefits on a pre-tax basis. Advocate implemented the Wellness Program as part of the Plan to support a culture of health and encourage employees to be tobacco-free. *See* Tobacco Surcharge FAQs–2024 ("2024 FAQs") (Exh. C), at 1.

---

[2] Exhs. A and B are attached to the Declaration of Nicole Hartigan. Exh. C is attached to the Declaration of Stephanie Angelini. The Plan (Exhs. A and B) is repeatedly referenced in the complaint and central to its claims. Dkt. 26 ¶¶ 4-6, 10-13, 23, 29. The complaint also relies upon an "annual FAQ sheet" and quotes the 2024 version of the Advocate Tobacco Surcharge FAQs (Exh. C). *Id.* ¶ 25. Accordingly, those documents are incorporated by reference by the complaint, permitting Advocate to cite them in this motion. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Plaintiff O'Flaherty began working for Advocate in May 2018, when the 2018 version of the Plan was in effect. Dkt. 26 ¶ 8. Plaintiffs Rogers and Hasler began working for Advocate after the 2020 version of the Plan took effect. *Id.* ¶¶ 7, 9. Advocate thus attaches both versions, which for present purposes are materially identical.

Plan participants who do not use tobacco may avoid the surcharge through tobacco screenings or affidavits. *Id.* at 2. For participants who use tobacco, the Plan imposes a per-paycheck surcharge, which was $50 in 2024. *Id.* at 1. Tobacco users may avoid the surcharge by participating in the Healthy Breathe Program, a tobacco cessation program. *Id.* at 2. Those who do so "will be reimbursed for the tobacco surcharges they incurred during the six (6) months they participated in the program at the end of their program completion month (rolling calendar year). Participants who complete the program will also have the surcharge removed for the remainder of the calendar year (if the program is started before July 1 of each year)." *Id.* at 3.

Advocate's Plan documents state that an employee who enrolls at the *beginning* of a plan year and completes the Healthy Breathe Program in July avoids the surcharge for the entire year:

> *Participant enrolls Jan. 1, 2024 and completes the program July 1, 2024. Reimbursement will be for the six-month period of Jan. 1 through July 1, and the surcharge would then be removed through Dec. 31, 2024. In other words,* **this participant avoids the Tobacco Surcharge for the entire year because he/she enrolled in the Healthy Breathe Program at the start of the year**.

*Id.* (bold emphasis added). The Plan documents further state that *mid*-year enrollment results in avoidance of the surcharge for the Healthy Breathe Program's six-month period and the remainder of the year, but not reimbursement for the months *prior* to enrollment.

> *Participant enrolls April 1, 2024 and completes the program Oct. 1, 2024. Reimbursement will be for the six-month period of April 1, 2024, through Oct. 1, 2024, and the surcharge would then be removed through Dec. 31, 2024.* **This participant avoids the Tobacco Surcharge for a portion of the year because he/she enrolled in the Healthy Breathe Program mid-year**.

*Id.* at 4 (bold emphasis added); *see* Dkt. 26 ¶ 25.

Plaintiffs here—current and former Advocate employees who paid the tobacco surcharge as Plan participants—allege that the Wellness Program violates ERISA because mid-year enrollees avoid the surcharge only on a "go-forward" basis instead of for the full plan year. Dkt. 26 ¶¶ 1, 7-9, 25-26. In addition, Plaintiffs allege that the Wellness Program has an "excessively restrictive"

3

and "unreasonable" design because participants' calls to smoking cessation coaches must be "two weeks apart with a maximum of three weeks"; the Healthy Breathe Program must be completed after six but before seven months; participants "cannot reschedule or cancel more than five calls"; and participants must certify their tobacco-free status and complete an affidavit "by November 17, 2023 or they are automatically assessed the surcharge starting January 1, 2024[.]" *Id.* ¶ 27.

As Plan participants, Plaintiffs had credentials to access Advocate's Healthy Living Portal at any time. *See* Angelini Decl. ¶ 21.[3] The Healthy Living Portal is a website with information concerning the Healthy Living Program, including the Wellness Program. *Id.* ¶ 5. The "annual [tobacco] FAQ sheet" that Plaintiffs cite (Dkt. 26 ¶ 25) is available on the Healthy Living Portal. *Id.* ¶ 12. The Health*e* You Program Rules and Guidance (2018-2019) and the Healthy Living Program Rules and Guidelines (2020-2024) (together, the "Healthy Living Rules"), which are part of the Plan, are available on the Healthy Living Portal. *Id.* ¶¶ 13-20; Healthy Living Rules 2018-2024 (Exhs. D-J).[4]

The Healthy Living Rules require Plan participants to raise claims through administrative procedures and exhaust administrative appeals before filing a lawsuit. *E.g.*, 2021 Healthy Living Rules (Exh. G), at 21-24. The Healthy Living Rules set forth the required claims and appeals

---

[3] The Healthy Living Portal login page (assethealth.com/advocateaurora) is public-facing and accessible on any network. *See* Angelini Decl. ¶ 8. Advocate advises Plan participants to access the Healthy Living Portal via the benefits login page for participants. *Id.* ¶ 9. The benefits login page has an "Access Healthy Living" link that brings participants to the Healthy Living Portal login page. *Id.* ¶ 10. The link to the Healthy Living Portal (formerly Health*e* You Portal) has existed since at least May 2018, when Plaintiff O'Flaherty began working for Advocate. *See id.* ¶¶ 10-11. Login instructions are available on the Healthy Living Portal page. *Id.* ¶ 11.

[4] The Healthy Living Rules are attached to the Angelini Declaration as Exhs. D-J. As part of the Plan, they are incorporated by reference. *See* p. 2 n.2, *supra*; *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) ("Th[e] incorporation-by-reference doctrine prevents a plaintiff from avoiding dismissal by omitting facts or documents that undermine his case."); *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *8 (N.D. Ill. Oct. 1, 2024).

procedures, *e.g.*, *id.* at 21, and include nearly identical "Exhaustion" provisions:

> A Claimant must follow the Claims and Appeals procedures to exhaust his or her administrative remedies under the Plan before the Claimant can pursue legal action relating to a Claim under the Plan (including the Rewards Program, the Fitness Center Incentive, *and the Tobacco Surcharge*) … No action at law or in equity may be brought with respect to Plan benefits until all rights under the Plan have been exhausted, and any such action must be brought no later than two years from the date of the Claims Administrator's final decision upon review of an Appeal or the expiration of the applicable limitations period under applicable law (whichever is earlier).

*Id.* at 24 (emphasis added).

Plaintiffs do not allege that they ever initiated a claim or pursued an appeal related to the Wellness Program. (In fact, they did not. *See* Angelini Decl. ¶ 22.) Nor do Plaintiffs allege that they were smoke-free, that they ever enrolled in the Healthy Breathe Program, or that they declined to enroll in or complete the Wellness Program because its design was unreasonably strict. Regardless, they assert ERISA violations and seek "[r]estitution of all amounts" Advocate collected as "unlawful surcharges," among other relief. Dkt. 26 ¶¶ 46-69 & Prayer for Relief.

## ARGUMENT

Plaintiffs may not bring their claims in federal court—due to lack of standing and failure to exhaust. Even if they cleared those threshold requirements, their claims rest on the incorrect premises that (a) ERISA entitles mid-year Wellness Program enrollees to retroactive reimbursement of tobacco surcharges for the months prior to their enrollment and (b) the Program is unreasonably designed. The claims should be dismissed for these and other reasons.

## I.     THE COMPLAINT FAILS TO ESTABLISH ARTICLE III STANDING

"There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). Thus, ERISA suits are subject to the "ordinary Article III standing analysis" (*id.*), under which a plaintiff must allege facts showing: (1) an injury in fact that is concrete and particularized; (2) a causal connection between the injury and the complained of conduct; and (3) that the injury

likely will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff must demonstrate standing "for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

### A.    The complaint does not establish Article III standing (Counts I-III)

Plaintiffs' claims rest on the premise that the Wellness Program violates ERISA because it is unreasonable in design and provides reimbursement of tobacco surcharges to mid-year enrollees on a prospective basis only. Dkt. 26 ¶¶ 25-27. Yet Plaintiffs do not allege a single fact suggesting that *their* payment of the surcharge had any connection to the Program's prospective reimbursement scheme or allegedly unreasonable design. Nor do Plaintiffs allege that they participated, or even tried to participate, in the Program. And although the complaint alleges that the Program's restrictive design and prospective payments "discourage[] participation" (*id.* ¶¶ 31, 50), Plaintiffs do not allege that *they* were ever dissuaded from participating or unsuccessful in completing the Program because of any purportedly unlawful design facets.

Absent such allegations, Plaintiffs' alleged injury (paying the surcharge) is traceable only to their own tobacco use, not to any failure by Advocate to provide a reasonably designed Program or retroactive reimbursements to mid-year enrollees. Plaintiffs' injury thus "would continue to exist even if" the Program "were cured of all of its alleged infirmities." *Johnson v. U.S. Off. of Personnel Mgmt.*, 783 F.3d 655, 662 (7th Cir. 2015) (affirming dismissal on standing grounds).

This defeats Article III standing. To establish the requisite causal connection between Plaintiffs' alleged injury and the complained-of conduct, the injury must be "fairly … trace[able] to the challenged action." *Lujan*, 504 U.S. at 560; *see Johnson*, 783 F.3d at 662 (injury must be "traceable to … i.e., the result of, … the conduct that they challenge") (citations omitted). Plaintiffs' allegations fail to show that their injury is traceable to the Wellness Program's design. At best, Plaintiffs allege statutory violations that may have impacted *other* Plan participants—

6

those dissuaded from participating in, or unsuccessful in completing, the Program due to its allegedly restrictive requirements, or those who received part-year reimbursement of the surcharge—but that caused no injury to Plaintiffs *themselves*. Article III requires more. *See Lujan*, 504 U.S. at 560 n.1 ("By particularized [injury], we mean that the injury must affect the plaintiff in a personal and individual way."). Accordingly, because Plaintiffs fail to establish that *they* suffered a particularized injury traceable to the complained-of components of the Program, they lack standing and their claims should be dismissed.

## B. Plaintiffs lack standing to pursue the purely disclosure-related component of Count II

Count II principally alleges Advocate failed to provide Plan participants with the requisite notice under ERISA because the Wellness Program does not substantively comply with ERISA. Dkt. 26 ¶ 57 (Advocate "did not give statutorily required notice of a *bona fide* wellness program."). But a portion of Count II alleges something different—that Advocate violated ERISA's disclosure requirements by "failing to include any mention of the tobacco surcharge o[r] the wellness program in either the Plan document or the SPD [summary plan description]." *Id.* ¶ 58; *see also id.* ¶ 21 ("wellness program terms … are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents … if compliance with the wellness program affects premiums … under the terms of the plan").

Importantly, Plaintiffs never allege that they failed to receive any required information or that they were unaware of the Wellness Program's terms. Rather, the complaint makes clear that Plaintiffs *were* aware of the Program's terms—including the availability of a reasonable alternative (participating in the Program) to successful smoking cessation—as they cite "an annual FAQ

sheet" and note what it "*clearly* states." Dkt. 26 ¶ 25 (emphasis added).[5] Plaintiffs' complaint, therefore, asserts only a claimed injury based on an alleged formatting error—that the required information was disclosed, just not in all the necessary documents. Such an alleged injury does not confer Article III standing.

Merely alleging a federal statutory violation does not confer standing because a court "cannot treat an injury as 'concrete' for Article III purposes based only on Congress's say-so." *TransUnion LLC*, 594 U.S. at 426 (citations omitted); *see also Thole*, 590 U.S. at 544 ("This Court has rejected the argument that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.") (internal quotation marks omitted). Of particular pertinence here, "bare procedural violation[s], divorced from any concrete harm," do not satisfy Article III. *TransUnion LLC*, 594 U.S. at 440.

Consistent with this principle, settled precedent holds that an "injury" based on incorrect formatting—where the required information is provided, just not in the prescribed format—is not a concrete Article III injury. *Id.* at 440-41. In *TransUnion*, the plaintiffs alleged they received copies of their credit files that excluded certain information required by federal law. *Id.* at 439-40. The missing information *was* included in a second mailing, but the second mailing omitted certain required information that had been included in the first mailing. *Id.* at 440. Plaintiffs contended the mailings deprived them of their right to receive information "in the format required by statute." *Id.* The Supreme Court ruled that the plaintiffs lacked Article III standing because they did not

---

[5] Plaintiffs cannot amend their way out of this problem by alleging that they failed to receive any required information related to the Wellness Program, as they had credentials to access the Healthy Living Portal, and thus the annual Tobacco FAQ document and Healthy Living Program Rules at any time. *See* Angelini Decl. ¶¶ 12-21; *see also* 29 C.F.R. § 2590.702(f)(4)(v).

show that they suffered "any harm *at all* from the formatting violations." *Id*.

As in *TransUnion*, a formatting error is the most Plaintiffs claim here. They do not plead they were denied required information about the Wellness Program's terms; rather, they complain that the disclosures were not presented in precisely the format that (they contend) ERISA requires. Dkt. 26 ¶ 32. Plaintiffs also do not allege any "downstream consequences" from failing to receive the information in that format or that they would have acted differently had Advocate formatted its disclosures in the manner they say ERISA requires. Such alleged formatting errors "cannot satisfy" Article III. *TransUnion*, 594 U.S. at 442. Accordingly, the purely disclosure-related component of Count II should be dismissed for lack of standing.

## II. PLAINTIFFS' CLAIMS FAIL FOR LACK OF EXHAUSTION AND ON THE MERITS

To survive a Rule 12(b)(6) motion, a complaint must state a claim that is "plausible" on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true." *Id*. A court need not accept plaintiff's legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. Plaintiffs failed to exhaust their administrative remedies (Counts I-III)

"As a pre-requisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies." *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002) (affirming dismissal of ERISA claim on exhaustion grounds). This requirement applies both to claims for benefits under a plan *and* claims alleging that some aspect of a plan violates ERISA. *See Kross v. W. Elec. Co.*, 701 F.2d 1238, 1245 (7th Cir. 1983) (rejecting argument that exhaustion requirement did not apply because "this suit involves purported violations of ERISA, rather than

the provisions of a particular pension plan"). Plaintiffs are excused from exhausting administrative remedies only if (1) they lack meaningful access to the administrative procedures or (2) exhaustion would be futile. *See Smith v. BCBS of Wis.*, 959 F.2d 655, 659 (7th Cir. 1992).

Plaintiffs had access to the Healthy Living Rules through Advocate's Healthy Living Portal. *See* Angelini Decl. ¶¶ 13-21. The Healthy Living Rules set forth detailed procedures for pursuing claims and appeals (*e.g.*, 2021 Healthy Living Rules (Exh. G) at 21), and warned that claimants "*must* follow the Claims and Appeals procedures to exhaust his or her administrative remedies under the Plan *before* the Claimant can pursue legal action relating to a Claim under the Plan (including … *the Tobacco Surcharge*) …" *Id.* at 24 (emphasis added).

If Plaintiffs believed they were aggrieved by the Wellness Program, they were required to follow the Claims and Appeals procedures in the Healthy Living Rules. *See id.* at 21-24. But Plaintiffs do not allege that they followed those procedures before filing this suit. Accordingly, their claims should be dismissed for failure to exhaust. *See McGinnis v. Costco Wholesale Corp. Emp. Benefits Program*, 2021 WL 4844094, at *5 (N.D. Ill. Oct. 18, 2021) (in dismissing ERISA claim on exhaustion grounds, noting the "complaint does not allege that plaintiff filed an administrative claim"); *Knigge v. Dorothy Prusek, 401(k) Plan*, 2015 WL 1397088, at *3 (N.D. Ill. Mar. 24, 2015) (because plaintiff's "claim does not contain any reference to exhaustion of her administrative remedies … she has failed to allege facts sufficient to show exhaustion prior to filing suit and her [ERISA] claim is dismissed").[6]

---

[6] Plaintiffs cannot amend their way out of this problem, as they in fact did not exhaust their claims. *See* Angelini Decl. ¶ 22.

10

**B.** **On the merits, the Wellness Program complies with ERISA (Counts I-III)**

Plaintiffs' three claims—unlawful imposition of a discriminatory tobacco surcharge (Count I); failure to notify of a reasonable alternative standard (Count II); and breach of fiduciary duty (Count III)—fail because the Wellness Program complies with ERISA.

**1.** **ERISA does not require retroactive reimbursement of the tobacco surcharge for mid-year enrollees**

ERISA prohibits discrimination against plan participants based on any health status-related factor. *See* 29 U.S.C. § 1182(b)(1). As a general rule, where a health status-related factor exists, a group health plan cannot require the individual, as a condition of enrollment or continued enrollment, "to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan." *Id.* There is an exception, however, for "establishing premium discounts or rebates or modifying otherwise applicable copayments or deductibles in return for adherence to programs of health promotion and disease prevention." *Id.* § 1182(b)(2)(B). A plan sponsor may invoke this exception by establishing "wellness programs" to promote health and prevent disease. *See id.*; 2024 FAQs at 1.

Federal regulations governing outcome-based wellness programs like Advocate's Wellness Program permit a health plan to charge an increased premium based on tobacco use. *See* 29 C.F.R. § 2590.702(f)(4)(i)-(v). The regulations require that wellness programs include a "reasonable alternative standard" for participants who do not meet the initial standard (being tobacco-free) for avoiding the tobacco surcharge, and further provides that the "full reward under the outcome-based wellness program must be available to all similarly situated individuals." *Id.* § 2590.702(f)(4)(iv). Advocate's Wellness Program offers completion of the Healthy Breathe Program as a reasonable alternative to participants who are not tobacco-free.

Plaintiffs' reimbursement-related claims rest on the premise that the word "*full*" in the term

"full reward" in § 2590.702(f)(4)(iv) means that participants who enroll in and complete the Healthy Breathe Program at *any* time during the plan year are entitled to avoid the surcharge for the *entire* year, even for the months *before* enrollment. Dkt. 26 ¶¶ 24, 26. That premise is incorrect.

As an initial matter, Plaintiffs ignore the first regulatory requirement for outcome-based wellness programs—"Frequency of opportunity to qualify"—which requires only that the program "give individuals eligible for the program the opportunity to qualify for the reward under the program *at least* once per year." 29 C.F.R. § 2590.702(f)(4)(i) (emphasis added). Advocate's Wellness Program does so. As the 2024 FAQs make clear, Plan participants who enroll in the Healthy Breathe Program in January avoid the tobacco surcharge "for the entire year":

> Participant **enrolls Jan. 1, 2024** and completes the program July 1, 2024. Reimbursement will be for the six-month period of Jan. 1 through July 1, and the surcharge would then be removed through Dec. 31, 2024. In other words, this participant **avoids the Tobacco Surcharge for the entire year** because he/she enrolled in the Healthy Breathe Program **at the start of the year.**

2024 FAQs at 3 (emphasis added). Accordingly, as the regulation requires, the "full reward" is available "at least once per year"—to participants who enroll in early January. 29 C.F.R. § 2590.702(f)(4)(i), (iv). Neither ERISA nor its regulations requires anything more.

Plaintiffs effectively seek to punish Advocate for offering tobacco-using participants *more* than what the regulation requires. Specifically, while not required, Advocate permits mid-year enrollment in the Healthy Breathe Program, but participants who enroll after January receive only a pro-rated benefit: they avoid the tobacco surcharge starting the month they enroll rather than for the entire plan year. Nothing in ERISA or its regulations prevents Advocate from offering pro-rated rewards—under which participants avoid the surcharge on a "go-forward" basis from their Healthy Breathe Program enrollment date—to mid-year enrollees.

In fact, the Department of Labor ("DOL") endorsed this very model in FAQs. *See FAQs About Affordable Care Act Implementation (Part XVIII) & Mental Health Parity Implementation*

12

(Jan. 9, 2014) ("DOL FAQs") (available at https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/affordable-care-act-implementation-faqs-part-xviii-mental-health-parity.pdf). Pertinent here, in response to the question whether a plan must provide a second opportunity to avoid a tobacco surcharge to individuals who initially do not enroll in a tobacco cessation program, the DOL answered "No," explaining that if a "participant is provided a reasonable opportunity to enroll in the tobacco cessation program at the beginning of the plan year and qualify for the reward (i.e., avoiding the tobacco premium surcharge) under the program, the plan *is not required* (but is permitted) to provide another opportunity to avoid the tobacco premium surcharge until renewal or reenrollment for coverage for the next plan year." *Id.* at 6 (emphasis added). This guidance is fully consistent with the regulation's requirement that wellness programs "must give individuals eligible for the program *the opportunity* to qualify for the reward under the program *at least once per year*." 29 C.F.R. § 2590.702(f)(4)(i) (emphasis added). Thus, by giving Plan participants one opportunity to enroll in the Wellness Program and earn the full reward—here, in early January—Advocate complied with ERISA and its regulations.

It is not unlawful for Advocate to offer Plan participants more than ERISA requires—enrollment after January, with a prospective though not retroactive benefit. The DOL FAQs are clear that plans offering *additional* enrollment opportunities may reward such participants with less than the "full reward": "Nothing … prevents a plan or issuer from allowing rewards (*including pro-rated rewards*) for mid-year enrollment in a wellness program for that plan year." DOL FAQs at 6 (emphasis added). A screenshot of the key FAQ, with highlighting, follows:

13

**Wellness Programs**

On June 3, 2013, the Departments issued final regulations[12] regarding nondiscriminatory wellness programs in group health coverage under PHS Act section 2705 and the related provisions of the Employee Retirement Income Security Act (ERISA) and the Code. The final regulations increase the maximum permissible reward under a health-contingent wellness program offered in connection with a group health plan (and any related health insurance coverage) from 20 percent to 30 percent of the cost of coverage, and further increase the maximum permissible reward to 50 percent for wellness programs designed to prevent or reduce tobacco use. The final regulations also address the reasonable design of health-contingent wellness programs and the reasonable alternatives that must be offered in order to avoid prohibited discrimination. In the preamble to the final regulations, the Departments stated that they anticipated issuing future subregulatory guidance as necessary. The following FAQs address several issues that have been raised since the publication of the final regulations.

**Q8: A group health plan charges participants a tobacco premium surcharge but also provides an opportunity to avoid the surcharge if, at the time of enrollment or annual re-enrollment, the participant agrees to participate in (and subsequently completes within the plan year) a tobacco cessation educational program. A participant who is a tobacco user initially declines the opportunity to participate in the tobacco cessation program, but joins in the middle of the plan year. Is the plan required to provide the opportunity to avoid the surcharge or provide another reward to the individual for that plan year?**

No. If a participant is provided a reasonable opportunity to enroll in the tobacco cessation program at the beginning of the plan year and qualify for the reward (i.e., avoiding the tobacco premium surcharge) under the program, the plan is not required (but is permitted) to provide another opportunity to avoid the tobacco premium surcharge until renewal or reenrollment for coverage for the next plan year. Nothing, however, prevents a plan or issuer from allowing rewards (including pro-rated rewards) for mid-year enrollment in a wellness program for that plan year.

_____
[12] See 78 FR 33158 (June 3, 2013).

Thus, by permitting mid-year enrollment, Advocate is doing _more_ than required to accommodate Plan participants who use tobacco products, and thus does not impose an unlawful discriminatory tobacco surcharge based on prospective reimbursements for mid-year enrollees.

### 2. Plaintiffs fail to plead the Wellness Program is unreasonably designed

The complaint alleges that certain facets of the Wellness Program are restrictively designed, rendering it "unreasonable" in violation of ERISA. Dkt. 26 ¶¶ 27, 29. Specifically, the complaint alleges there are timing restrictions for calls to coaches and for completion of the Healthy Breathe program; a prohibition on cancelling or rescheduling more than five calls; and that participants must certify they are tobacco-free by "November 17, 2023" or are "automatically

assessed the surcharge starting January 1, 2024." *Id.* ¶ 27.

The complaint provides no statutory or regulatory basis, or any ascertainable standard, for concluding these design features are unduly onerous. Courts reject "sheer speculation, bald assertions, and unsupported conclusory statements" like these. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). As discussed in Section I, *supra*, Plaintiffs do not allege that *they* suffered any disadvantage due to the Wellness Program provisions they allege are too restrictive or unreasonable. When a complaint's facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Taha*, 947 F.3d at 469 (citations omitted).

For these reasons, Count I, which alleges that Advocate imposes a discriminatory tobacco surcharge, fails to state a claim. Count II fails as well insofar as it alleges that Advocate violated its disclosure obligations because the Wellness Program does not substantively comply with ERISA. Finally, insofar as Count III alleges that Advocate breached its ERISA fiduciary duties by "allowing the Compensation and Administrative Committees to impose an unlawful tobacco surcharge in connection with a non-compliant wellness program in violation of ERISA," Dkt. 26 ¶ 66, it fails as a matter of law as well.

### C. Plaintiffs' fiduciary duty claim (Count III) fails for other reasons

Plaintiffs' fiduciary duty claim fails for three additional reasons.

#### 1. Advocate acts as a settlor, not a fiduciary, to the extent it designs or performs ministerial tasks under the Wellness Program

At times, the complaint alleges that the two unserved defendants are responsible for administering the Wellness Program. Dkt. 26 ¶¶ 64-65. At others, the complaint alleges that Advocate is as well. *Id.* ¶ 28 ("Defendants charged …" and "Defendants administered …").

To the extent Plaintiffs allege a fiduciary duty claim against Advocate for *designing or*

*administering* a plan that purportedly violates ERISA, the claim fails. In "every case charging breach of ERISA fiduciary duty … the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was *acting as a fiduciary* (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (emphasis added). ERISA does not "describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead, it defines an administrator, for example, as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan." *Id.* at 225-26 (citing 29 U.S.C. § 1002(21)(A)). Thus, the fact that employers sometimes act as fiduciaries with respect to employee benefits does not prohibit them from also "tak[ing] actions to the disadvantage of employee beneficiaries, when they act as … plan sponsors (*e.g.*, modifying the terms of a plan as allowed by ERISA to provide less generous benefits)." *Id.* at 225.

To the extent Plaintiffs claim Advocate breached a fiduciary duty in *creating* a wellness program with a tobacco surcharge that violates ERISA, the claim fails because altering the terms of a plan is a "settlor" function, not a fiduciary function. *See id.* at 226 ("an employer's decisions about the content of a plan are not themselves fiduciary acts"); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (when employers modify welfare benefit or pension plans, they do not act as fiduciaries, but rather act analogously to settlors of a trust).[7] And to the extent Plaintiffs' claim rests on Advocate's *implementing or administering* the Plan as designed, that too fails because collecting the tobacco surcharge in accordance with the Wellness Program is not a fiduciary act. Fiduciary acts require the exercise of discretion in the administration of a plan. *See McGath v.*

---

[7] The term "settlor" in the ERISA context refers to decisions relating to the formation, design, and termination of a plan. *See Lockheed Corp.*, 517 U.S. at 890-91. These actions are distinct from decisions and actions subject to ERISA's fiduciary duty rules. *See id.*

*Auto-Body North Shore, Inc.*, 7 F.3d 665, 670-71 (7th Cir. 1993). However, DOL guidance designates the "[c]ollection of contributions … as provided in the plan" as a ministerial, not fiduciary, function because there is no exercise of discretion. 29 C.F.R. § 2509.75-8 (Question D-2) ("a person who performs purely ministerial functions such as [collecting contributions] is not a fiduciary"); *see also Boucher v. Williams*, 13 F. Supp. 2d 84, 92 (D. Me. 1998) (same).

The point is illustrated by *Secretary of Labor v. Macy's, Inc.*, 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021). There, the court dismissed the Secretary's fiduciary duty claims against Macy's, reasoning that Macy's "implemented a discriminatory wellness program *in accordance with* the impermissibly discriminatory terms it established when it created the program." *Id.* at *18. As the court explained, those actions were "not enough to make Macy's a fiduciary rather than a settlor," as the distinction between "creation (a settlor function) and implementation (a fiduciary function) is illusory where the Secretary alleges only that a discriminatory wellness program was implemented as created." *Id.*; *see also Sec'y of Labor v. Macy's, Inc.*, 2022 WL 407238, at *6 (S.D. Ohio Feb. 10, 2022) (noting that trustees do not breach fiduciary duties "simply by presiding over a plan which fails in some respect to conform to one of ERISA's myriad provisions").

As in *Macy's*, Plaintiffs here allege that Advocate breached its fiduciary duty by collecting tobacco surcharges in administering a wellness program that (allegedly) does not comply with ERISA. Dkt. 26 ¶¶ 28, 33, 67-69. Even if the surcharge violated ERISA, establishing the surcharge and implementing it as written are not actions Advocate took in a fiduciary capacity. Rather, they are "settlor" functions that cannot form the basis for an ERISA fiduciary duty claim.

### 2. The Plan does not subject Advocate to a "trust" requirement under ERISA

The contours of Plaintiffs' remaining fiduciary duty allegations are unclear. Those allegations are rooted in Plaintiffs' assertions that Advocate improperly "retained" the surcharge

funds (Dkt. 26 ¶¶ 67, 69), but they do not explain why such "retention" results in a fiduciary duty violation. Without alleging additional facts, Plaintiffs leap to the conclusion that by "retaining" and "depositing" tobacco surcharge funds "into Advocate's own accounts" rather than "placing these funds in a trust account," Advocate did not contribute the funds to the Plan, improperly dealt with Plan assets in its own interests, and engaged in self-dealing. *Id.* ¶¶ 33, 67, 69.

These allegations stem from the incorrect premise that Advocate was required to place tobacco surcharge funds in a trust account. ERISA's trust requirement does not apply where—as here, *see* Plan § 1.2 (Exh. A)—participant contributions are made under a cafeteria plan and benefits are paid directly out of the employer's general assets. *See* U.S. Dep't of Labor Tech. Release 92-01, *DOL Enforcement Policy for Welfare Plans with Participant Contributions* (May 28, 1992) (available at https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/technical-releases/92-01). DOL Technical Release 92-01 "announced an exception to the trust requirement for 'cafeteria plans' under 26 U.S.C. § 125." *Hammer v. Johnson Senior Living Ctr.*, 2020 WL 7029160, at *14 (W.D. Va. Nov. 30, 2020). Specifically, the DOL "will not assert a violation in any enforcement proceeding solely because of a failure to hold participant contributions in trust," as DOL policy "expressly limited [] ERISA's trust requirements as they apply to cafeteria plans." *Id.*; *see also Phelps v. C.T. Enters.*, 194 F. App'x 120, 125 (4th Cir. 2006) ("cafeteria plan avoided the trust requirement"). Accordingly, Plaintiffs' fiduciary duty claim based on a trust requirement should be dismissed.

### 3. Plaintiffs do not allege losses to the Plan

Finally, Plaintiffs claim they are authorized to bring "this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2)," and that pursuant to "29 U.S.C. § 1109, [Advocate] is liable to make good to the Plan all losses resulting from [its] breaches." Dkt. 26 ¶ 72. Section 1132(a)(2) permits an action by "a participant, beneficiary or fiduciary for appropriate

18

relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109, in turn, requires fiduciaries to "make good to such plan any losses to the plan resulting from each such breach …" 29 U.S.C. § 1109(a). As the Seventh Circuit explained, "29 U.S.C. § 1109(a) imposes liability for Plan losses only." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 511 (7th Cir. 2009); *see also Macy's*, 2022 WL 407238, at *11 (noting "§ 1132(a)(2), which incorporates § 1109, requires 'losses to the plan' as a prerequisite for bringing suit").

Plaintiffs ask Advocate to "make good to the Plan all losses," but they do not plead any losses to the Plan. Nor do Plaintiffs explain how losses to the Plan could result from the facts alleged here. Further, to the extent Plaintiffs rely on their allegations about the lack of a trust to support losses to the Plan, those allegations fail for the reasons set forth above.

### D. The DOL regulations, insofar as they require participation rewards for Plan participants who continue to smoke, do not faithfully implement ERISA and therefore cannot predicate viable ERISA claims

If this Court finds that Plaintiffs have stated a claim for violating the regulations discussed above, it should find those regulations invalid insofar as they require that participation rewards be given to Plan participants who continue to smoke. ERISA (the statute) permits a group health plan to offer rewards "in return for *adherence* to programs of health promotion and disease prevention." 29 U.S.C. § 1182(b)(2) (emphasis added). The regulations, by contrast, require rewards for mere *participation* in a smoking cessation program. *See* 29 C.F.R. § 2590.702(f)(4). In other words, under the regulations, wellness program participants may earn rewards even if they continue to use tobacco. That participation standard conflicts directly with ERISA's "adherence" requirement.

The Supreme Court recently made clear that regulations are invalid if they do not properly implement statutory text. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). In overturning "*Chevron* deference," *Loper Bright* demands the "best reading" of a statute be determined by a court, not a federal agency. *Id.* After *Loper Bright*, the regulations upon which

Plaintiffs base their claims cannot be used to water down ERISA's statutory requirement that a participant "adhere[]" to the wellness program's requirements to qualify for rewards under that program. 29 U.S.C. § 1182(b)(2). The "best reading" of 29 U.S.C. § 1182(b)(2) does not permit the DOL's regulation to replace the touchstone of a lawful wellness program—"*adherence* to [a] program[] of health promotion and disease prevention"—with one of the DOL's own making: mere participation. Once the DOL's unenforceable, participation-only requirement is stripped from the wellness regulation, Plaintiffs have no basis to assert any claim based on a purported discriminatory wellness program.

## CONCLUSION

Advocate respectfully requests that the Court dismiss the Second Amended Complaint. Because Plaintiffs have had three chances to plead their claims, and because the flaws with their claims cannot be cured by repleading, dismissal should be with prejudice. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818-19 (7th Cir. 2013) (affirming dismissal with prejudice, observing that "in court, as in baseball, three strikes and you're out"). On January 8, 2025, Advocate's counsel conferred with Plaintiffs' counsel regarding this motion. Plaintiffs oppose the motion. The parties propose a response deadline of February 13, 2025, and a reply deadline of March 6, 2025.


Dated: January 9, 2025                    Respectfully submitted,

                                          ADVOCATE AURORA HEALTH, INC.

                                          /s/ *Gary Feinerman*
                                          Gary Feinerman (ARDC No. 6206906)
                                          Kathleen Ryan (ARDC No. 6333276)
                                          LATHAM & WATKINS LLP
                                          330 North Wabash Avenue, Suite 2800
                                          Chicago, IL 60611
                                          Telephone: 312-876-7700
                                          gary.feinerman@lw.com
                                          kathleen.ryan@lw.com

Joseph B. Farrell (*pro hac vice*)
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: 213-485-1234
joe.farrell@lw.com

*Attorneys for Defendant Advocate Aurora Health, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing was served electronically through this Court's electronic service system upon all parties and/or counsel of record on January 9, 2025. Notice of this filing is sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Gary Feinerman*
Gary Feinerman