**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KELLY ROGERS, KATHRYN DEISINGER O'FLAHERTY, and WYNDAHM HASLER on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ADVOCATE AURORA HEALTH, INC., the COMPENSATION COMMITTEE OF THE BOARD OF DIRECTORS OF ADVOCATE AURORA HEALTH, INC., and the ADVOCATE AURORA HEALTH, INC. NON-CHURCH BENEFIT PLAN ADMINISTRATIVE COMMITTEE,<br><br>Defendants. | **Civil Action No.: 1:24-cv-8664-LAH**<br><br>**THIRD AMENDED COMPLAINT – CLASS ACTION** |

Plaintiffs Kelly Rogers, Kathryn Deisinger O'Flaherty, and Wyndham Hasler ("Plaintiffs"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Advocate Aurora Health, Inc. ("Advocate"), the Compensation Committee of the Board of Directors of Advocate (the "Compensation Committee"), and the Advocate Non-Church Benefit Plan Administrative Committee (the "Administrative Committee") (collectively, "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. It is both unfair and unlawful for Defendants to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges

Defendants' unlawful practice of charging participants of the Advocate Aurora Health Welfare Benefit Plan (the "Plan") a "tobacco surcharge" without administering a compliant wellness program as required by the Employee Retirement Income Security Act of 1974 ("ERISA") and its implementing regulations. Those regulations mandate that *every plan communication* describing a tobacco-related premium differential must include a clear notice of the availability of a reasonable alternative standard, instructions for obtaining that alternative, and an explicit statement that the recommendations of the participant's personal physician will be accommodated. Defendants' communications fail to meet these requirements. Indeed, only one of the documents provided to participants even mentions the possibility of physician involvement, and that reference is misleadingly limited to those for whom quitting is medically inadvisable, rather than all participants who do not meet the outcome-based standard, as the regulations require.

2. ERISA's wellness-program framework is intended to prevent health-status discrimination and to ensure that *all similarly situated individuals* have a genuine opportunity to earn the same, full reward. The rules could not be clearer: once a participant satisfies a reasonable alternative standard—whether by attempting to quit, participating in a cessation program, or following a physician's recommendation—the plan must make the *entire* reward available, including reimbursement of any surcharges already paid for that plan year.

3. Defendants' program violates these rules in multiple, systemic ways. The so-called "Healthy Breathe" program reimburses participants only for the six-month period of active participation, regardless of when they enroll during the plan year. A participant who joins mid-year receives at most six months of reimbursement and forfeits the surcharges paid earlier in the year. In contrast, a participant who begins on January 1 may recover a full year's worth, meaning that two participants who are otherwise *similarly situated* under ERISA receive different financial

outcomes solely because of when they happen to enroll. This arbitrary temporal limitation undermines the "similarly situated" requirement and deprives most participants of the full reward guaranteed by law. Participants who successfully quit using tobacco are penalized because even those who screen negative or attest to quitting may have the surcharge removed only *prospectively* but are not reimbursed for surcharges paid earlier in the year. Thus, even those who achieve the program's stated health objective receive only a partial, forward-looking reward, in direct conflict with ERISA's mandate that the full reward be provided to every individual who meets or satisfies the reasonable alternative standard. That is not health promotion.

4. The program's design compounds these violations. Participants must complete two coaching calls per month for six consecutive months and are automatically expelled from the program if they fail to reschedule a single call within three business days. No appeal is allowed. Those using nicotine-replacement therapies, such as patches or gum, are explicitly told they cannot avoid the surcharge at all. These features make the program unreasonably burdensome and discriminatory under the "facts-and-circumstances" standard in the regulations. In short, Defendants' program is neither reasonable in design nor uniform in application: it penalizes those attempting to comply, excludes those following medical advice, and withholds the full reward from nearly everyone.

5. Accordingly, Plaintiffs bring this action under ERISA §§ 502(a)(2) and (a)(3) to recover the unlawfully imposed tobacco surcharges, to obtain equitable and injunctive relief requiring Defendants to reform their wellness program to comply with federal law, and to ensure that all similarly situated Plan participants receive the same full reward without regard to timing, tobacco-use status, or medical circumstances.

6. Tobacco surcharges have become more prevalent in recent years but to be lawful plans can impose these surcharges only in connection with ***compliant*** "wellness programs," that satisfies strict conditions established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") under ERISA. In 2014, the Departments jointly issued detailed regulations interpreting ERISA § 702, 29 U.S.C. § 1182, and Public Health Service Act ("PHSA") § 2705, 42 U.S.C. § 300gg-4, which prohibits discrimination in group health plans based on health status. These regulations set forth clear criteria that "***must*** be satisfied" for a tobacco surcharge to fall within the safe harbor for health-contingent wellness programs. One of those core requirements is the obligation to provide participants with clear notice of the availability of a reasonable alternative standard and an express statement that the recommendations of a participant's personal physician will be accommodated in ***all plan materials*** discussing the surcharge. Failure to include this notice in the communications actually sent to participants violates the wellness program rules and renders the program noncompliant.

7. The Departments' regulatory requirements are designed to ensure that wellness programs genuinely promote health and do not operate as a "subterfuge for discriminating based on a health factor." 29 C.F.R. § 2590.702(f)(4)(iii). To qualify as a compliant wellness program, employers must provide meaningful notice to participants, including contact information and a statement that the recommendations of the participant's personal physician will be accommodated. These notice obligations are essential because they ensure that participants are aware of all the available avenues by which they can avoid discriminatory surcharges. Defendants' wellness program fails this basic test.

8. Outcome-based programs,[1] such as smoking cessation programs, must offer a clearly defined "reasonable alternative standard" that allows "all similarly situated individuals" to avoid a surcharge if they are unable to meet the program's initial standard, such as certifying that they are tobacco-free. Critically, ERISA's implementing regulations require that plans clearly disclose the availability of a reasonable alternative standard *and* state that participants' personal physician recommendations will be accommodated.[2] These disclosures must appear ***in all plan materials that describe the terms of the wellness program***, not just the SPD.[3] As discussed, not all of Defendants' materials contain the proper information informing participants of their rights to all the various avenues to avoid the surcharge, leaving participants uncertain and unaware of their rights with respect to the surcharge. This omission deprived them of the notice they needed to avoid the surcharge, rendering the program noncompliant with ERISA's wellness regulations and reflecting a broader breach of fiduciary duty in administering the Plan.

9. Defendants are not entitled to take advantage of ERISA's statutory safe harbor because their wellness program fails to satisfy the mandatory regulatory requirements that "must be satisfied" for a premium differential based on a health factor to be lawful under ERISA. *See*

---

[1] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[2] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**"); *see also* 29 C.F.R. § 2590.702(f)(4)(v).

[3] Final Regulations, 33166 ("For ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) ***are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents*** (which must be provided upon request), if compliance with the wellness program affects premiums, cost sharing, or other benefits under the terms of the plan." (emphasis added)).

Final Regulations, 33163; 29 C.F.R. § 2590.702(f)(4). A central deficiency of Defendants' program is that it fails to inform participants—in all Plan materials describing the tobacco surcharge—that their personal physician's recommendations will be accommodated and that a reasonable alternative standard is available to all participants who fail to meet the tobacco-free outcome. Numerous Plan communications distributed to employees describing the surcharge mention the surcharge but omit the required disclosure altogether. As a result, participants are left unaware of their statutory right to request a physician-directed alternative or to obtain the same full reward as non-tobacco users. This omission violates 29 C.F.R. § 2590.702(f)(4)(v), which mandates that this disclosure appear in *all* plan materials describing the program's terms to ensure participants are fully informed of every available avenue to avoid the surcharge.

10. Equally fatal, the program denies participants the "full reward" required by 29 C.F.R. § 2590.702(f)(4)(iv). Defendants' Healthy Breathe program reimburses participants only for the six-month period of active participation, and only if enrollment occurs early enough in the Plan year. Participants who begin mid-year, or who successfully quit and screen negative after six months, receive at most partial reimbursement, but never the full reward as mandated by the statute. 42 U.S.C. § 300gg-4(j)(3)(D). This timing-based limitation means that similarly situated participants receive different financial outcomes based solely on when they enroll, contrary to the requirement that all individuals have an equal opportunity to earn the full reward. Likewise, those who complete their physician-recommended program do not receive the full reward. Thus, Defendants' temporal restrictions and prospective-only reimbursements violate the requirement that "all similarly situated individuals" be provided with the full reward, in violation of ERISA.

11. Defendants therefore cannot meet their burden to demonstrate compliance with the statutory safe harbor. They failed to provide uniform notice of the reasonable alternative standard

in all Plan materials, failed to include the required disclosure that personal physicians' recommendations will be accommodated, and denied participants the full reward guaranteed to all similarly situated individuals. These defects render Defendants' program noncompliant with the Final Regulations and demonstrate that the tobacco surcharge is not part of a lawful "program of health promotion and disease prevention," but rather an impermissible cost-shifting mechanism that penalizes employees based on their health status.

12. Plaintiffs are employees of Advocate who paid the unlawful tobacco surcharges to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiffs and continues to impose such a burden on those similarly situated.

13. Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Defendants from continuing to allow Advocate to profit from their violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendants are fiduciaries of the Plan who have a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiffs, on behalf of themselves and the Plan as a whole, seek appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

14. Plaintiff Kelly Rogers is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in the County of DuPage. Ms. Rogers was an employee of Advocate from June 2023 to March 2024 who paid the tobacco surcharge in the form of additional premiums associated with the health insurance offered through her employer during the applicable limitations period.

15. Plaintiff Kathryn Deisinger O'Flaherty is a citizen of the state of Tennessee living in the County of Shelby. Ms. Deisinger O'Flaherty was an employee of Advocate from May 2018 until February 2023 who paid the tobacco surcharge in the form of additional premiums associated with the health insurance offered through her employer during the applicable limitations period.

16. Plaintiff Wyndham Hasler is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in the County of Lake. Mr. Hasler is an employee of Advocate and has been since 2020 who paid the tobacco surcharge, for himself and his spouse, in the form of additional premiums associated with the health insurance offered through his employer during the applicable limitations period.

17. Plaintiffs are participants of the Plan pursuant to 29 U.S.C. § 1002(7).

18. Plaintiffs have fully complied with and exhausted all administrative remedies available under the terms of the Plan. Each Plaintiffs participated in the Plan's internal administrative process by submitting claims and appeals challenging the imposition and continued collection of the tobacco surcharge, asserting that the surcharge was unlawful and that Defendants failed to administer a compliant wellness program under ERISA. Those claims were expressly denied by Defendants. Accordingly, all Plaintiffs have satisfied any exhaustion requirement.

19. Advocate is a not-for-profit health system headquartered in Downers Grove, Illinois. Advocate operates over 500 care sites, including hospitals, outpatient centers, and clinics, employing thousands of physicians and nurses. Advocate is the sponsor of the Plan, which has its headquarters in Milwaukee, Wisconsin. Recently filed public documents show the Plan has over 74,000 active participants as of January 1, 2023. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a). Advocate's Board of Directors oversees and appoints the members of the Compensation Committee.

20. The Compensation Committee is a designated committee of Advocate's Board of Directors that oversees key compensation and benefits decisions affecting the Plan. The Compensation Committee is vested with the authority to appoint members of the Administrative Committee, is responsible for amending and administering the Plan, and is a named fiduciary of the Plan.

21. The Administrative Committee is a standing sub-committee of the Compensation Committee that has discretionary authority to administer the Plan. The Administrative Committee is responsible for managing the day-to-day administration of the Plan and is a named fiduciary of the Plan.

## JURISDICTION AND VENUE

22. The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and §28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs.

23. This Court has personal jurisdiction over Defendants because Advocate has significant operations in this District, Plaintiffs' claims and the claims of all others similarly situated arise from the acts and omissions of Defendant with respect to its activities and conduct concerning Plaintiffs in the State of Illinois, and Advocate has purposefully availed itself of the privilege of conducting business in the State of Illinois. Upon information and belief, the Compensation and Administrative Committees conduct a significant amount of their operations from this District and have purposefully availed themselves of the privilege of conducting business in the State of Illinois.

24. Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because this is the District in which a substantial portion of the statutory breach took place, and Plaintiffs worked in this District, and is a District in which Defendant operates and may be found.

## FACTUAL BACKGROUND

### I. DEFENDANT'S TOBACCO SURCHARGE VIOLATE ERISA'S ANTI-DISCRIMINATION RULE

#### A. Statutory and Regulatory Requirements

25. To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1).

26. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B)(emphasis added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

27. Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan

requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

28. Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the Affordable Care and Public Health Service Acts in 2010, the Departments, published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

29. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden shifts to the employer to prove that the surcharge is non-discriminatory because the wellness plan qualifies as a "program[] of health promotion and disease prevention" that satisfies *all* the necessary regulatory criteria.

30. Compliance with the regulatory criteria is not optional. These criteria serve as the standard by which these wellness programs can be evaluated and are the only lawful pathway for

plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("***these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention*** . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . ." (emphases added)).

31. Only by satisfying all of the criteria, can employers ensure their plans are wellness programs and "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* As one court concluded, in a tobacco surcharge case, regarding an employer's obligation to satisfy the regulatory criteria, "[a]ll means all… no matter how small the requirement may be." *Chirinian v. Travelers Co.*, No. 24-cv-3956, 2025 U.S. Dist. LEXIS 144669, at *28 (D. Minn. July 29, 2025).

32. The criteria provide guidelines for employers to prevent them from using surcharges as a revenue-generating mechanism dressed up as a program of health promotion. If a program fails to meet even one of these requirements, the program does not qualify as a "program[] of health promotion" and cannot qualify under ERISA's statutory carve-out. In that case, any premium differentials imposed based on a health factor violate the statute's anti-discrimination provisions. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if all of the [] requirements are satisfied***." (emphasis added)).[4] In sum, a wellness program that fails to satisfy

[4] Congress codified parts of the 2006 regulations regulatory criteria when, through the Patient Protection Act ("PPA") and ACA, it amended the PHSA, and incorporated (nearly verbatim) the regulatory language into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the [PHSA] [42 U.S.C. § 300gg *et seq*.] (as amended by the [PPA and ACA]) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]"). Since then, the Departments have, in accordance with the they were granted, updated the regulatory framework through the Final Regulations, refining and clarifying the requirements to ensure

each criterion is not a legitimate health promotion initiative but an unlawful penalty that discriminates based on health status, in direct violation of ERISA's protections.[5]

**B. Regulatory Criteria**

33. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who

---

compliance with ERISA's nondiscrimination provisions and the statutory criteria established by Congress. *See* 42 U.S.C. § 300gg-4(n) ("Nothing in this section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section"); *see also* 45 C.F.R. § 146.121(f) (adopting identical language to § 2590.702(f)).

[5] Congress adopted these regulatory criteria when, through the Patient Protection and Affordable Care Act, it amended the Public Health Service Act, incorporating these criteria into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the Public Health Service Act [42 U.S.C. § 300gg *et seq*.] (as amended by the Patient Protection and Affordable Care Act) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]").

does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: "The ***full reward*** under the outcome-based wellness program must be available to ***all similarly situated individuals***." 29 C.F.R. § 2590.702(f)(4)(iv).

(e) Notice Requirement: "The plan must disclose in all plan materials describing the terms of the program ***the availability of other means of qualifying for the [full] reward***." Final Regulations, 33159 (emphasis added).

34. The Departments have explained that ERISA's wellness program rules are designed to *promote health without enabling discrimination*. The Final Regulations reflect this intent by requiring that any program imposing a premium differential, such as a tobacco surcharge, must provide participants with a genuine and recurring opportunity to avoid the surcharge by satisfying a reasonable alternative standard.

35. The once-per-year requirement was adopted as a bright-line rule to ensure that participants have a *meaningful* opportunity to qualify for the full value of the reward. Plans must give participants an opportunity at least once every twelve months to meet an alternative standard—whenever that occurs during the plan year—and receive the *same full reward* as those who meet the initial standard (i.e., non-smokers). Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard ***for that plan year***." (emphasis added)). Employers have flexibility with regards to *access* to the alternative standard. They can, for example, provide access once a year (assuming the

window complies with the reasonableness requirements), for three months, four months, or throughout the plan year. What they cannot do is reduce the value of the reward for participants based on when they satisfy the standard.

36. The Departments have made clear that every participant must receive "the *same, full reward*" for satisfying the reasonable alternative standard, even if the individual completes that standard midyear.[6] A compliant plan must therefore make the reward available retroactively or otherwise ensure that the value of the reward is identical for all similarly situated participants. Failure to do so violates ERISA's nondiscrimination rules.

37. For health contingent wellness programs, the DOL Regulations require the notice be disclosed "in all plan materials describing the terms of" the program. 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C § 300gg-4(j)(3)(E). Plans that describe surcharges in enrollment materials without including the required notice violate this rule and fail to qualify for the statutory safe harbor. The Departments explained that while materials that merely "mention" a program, without describing its terms, need not include the notice, any plan materials that reference a *premium differential based on tobacco use* or other health-contingent standard ***must*** contain the required disclosure. Final Regulations, 33166 ("a plan disclosure that references a premium differential based on tobacco use … is a disclosure describing the terms of a health-contingent wellness program and, therefore, must include this disclosure."). Thus, enrollment materials or benefit guides that reference higher premiums or surcharges based on tobacco use, but

[6] "The intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive***. . . ." Final Regulations, 33165 (emphases added); *see id.*, 33163 ("While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***.").

omit the required disclosure notice—including omitting contact information and a statement that a participant's physician's recommendations will be accommodated—violate this rule.

38. These requirements exist precisely to prevent employers from including these disclosures in some plan materials but then excluding that information from materials that are actually sent to participants. Employers that include misleading and varying notices, and omit the required disclosures altogether from most plan communications run directly contrary to the Departments' guidance and fail to provide the notice necessary to make informed enrollment decisions.

39. Defendants impose a premium differential without providing the required notice disclosures in most of the communications they send to participants, failing to notify participants of all the avenues available to them to avoid the surcharge.

40. Defendants' tobacco surcharge is unlawful because it imposes a premium differential without providing the required disclosure in ***all*** Plan materials describing the surcharge and because it fails to deliver the "full reward" required under ERISA's wellness-program regulations. Few if any of the program communications clearly inform participants that their personal physician's recommendations will be accommodated or that a reasonable alternative standard that ensures the "full reward" is provided to all those who satisfy an alternative standard. Instead, participants and their spouses are automatically defaulted into tobacco-user status unless they opt out and may obtain, at most, partial or time-limited reimbursement tied to when they enroll in the six-month Healthy Breathe Program. Participants who begin later in the year, or who successfully quit mid-year, receive only a *prospective* cessation of the surcharge and no reimbursement for surcharges paid prior to their first call—contrary to the *full reward rule* requiring that once a participant satisfies a reasonable alternative standard, the entire premium differential for the plan year must be provided. 42 U.S.C. § 300gg-4(j)(3)(D). These structural defects collectively deprive participants of equal access to the same full reward and meaningful

notice of all avenues to avoid the surcharge. As discussed, the Final Regulations permit outcome-based wellness programs, such as tobacco-cessation initiatives, only when ***every*** regulatory requirement is satisfied, including the *full reward* and required notice disclosures in all Plan communications. *See* 29 C.F.R. § 2590.702(f)(4). Because Defendants' program meets neither, it is not a compliant wellness program under ERISA.

## II. DEFENDANTS CANNOT AVAIL THEMSELVES OF ERISA'S SAFE HARBOR

41. Defendants' tobacco surcharge is unlawful and discriminatory because it fails to comply with the Final Regulations governing tobacco surcharges and wellness programs. To qualify for ERISA's safe harbor under 29 U.S.C. § 1182(b)(2)(B), a wellness program must clearly disclose a reasonable alternative standard that guarantees that all who satisfy the standard receive the same full reward, and it must provide meaningful notice in ***all*** plan materials discussing the premium differential, including contact information for accessing the alternative and a statement that participants' personal physicians' recommendations will be accommodated. *See* 29 C.F.R. § 2590.702(f)(4)(v). Defendants' Plan fails each of these requirements.

42. Defendants automatically impose a $50-per-pay-period "Tobacco Surcharge" on employees and their covered spouses unless they affirmatively complete a "tobacco-free affidavit" or enroll in the so-called "Healthy Breathe" cessation program. All but one of the communications participants actually receive—including the January 2024 Tobacco Surcharge Letter and the Healthy Breathe follow-up email—contains the disclosure required by law. Just a lengthy FAQ document even mentions physician involvement, and that reference is limited to individuals for whom it is "medically inappropriate … to attempt to become tobacco-free." That statement is misleading because the Final Regulations require accommodation of a participant's physician's recommendation for *any* individual who fails to meet the outcome-based standard, not solely those

medically unable to quit. By restricting physician participation to a narrow subset of employees and omitting the disclosure from every other communication, Defendants violate the uniform-notice requirement and misinform participants about their rights.

43. Defendants' program further violates the full reward rule because it conditions reimbursement on when a participant enrolls and limits repayment to only six months of surcharges. The January 2024 Letter and FAQs expressly state that participants who complete the six-month Healthy Breathe program "will be reimbursed for the tobacco surcharges assessed during their six months of program participation" but not before that, and that the surcharge "will be shut off … for the remainder of 2024." Thus, a participant who begins on January 1 may recover a full year's surcharge, but one who enrolls the next month or in April or later receives only a partial refund and forfeits months of payments. This arbitrary, timing-based reimbursement structure violates 42 U.S.C. § 300gg-4(j)(3)(D), which requires that "all similarly situated individuals" be provided with the *entire* reward once they satisfy the reasonable alternative standard. Those who actually quit and screen smoke free are not even eligible for any reimbursement.

44. The program is also unreasonably designed. Participants must complete two coaching calls per month for six months, may not miss or reschedule a call more than five times, and are automatically expelled from the program if they fail to reschedule a missed call within three business days, without appeal. Such rigid rules, particularly when coupled with the timing limitations and lack of retroactive reimbursement, render the program "overly burdensome" and a "subterfuge for discrimination," contrary to ERISA and the Final Regulations. These procedural traps ensure that few participants ever receive the full reward and maximize the chances of Defendants keeping more of the surcharge funds to offset their contributions to the Plan.

45. Even those who actually quit smoking are denied the full benefit. Under Defendants' own materials, participants who screen tobacco-free or complete the program have the surcharge removed prospectively but are not reimbursed for surcharges previously paid. This prospective-only relief penalizes the very individuals who achieve the program's health objective and violates ERISA's requirement that every participant who satisfies a reasonable alternative standard be granted the same full reward as a non-tobacco user for the entire plan year. Plan materials, including an FAQ document, compound this confusion by prohibiting participants who use nicotine-replacement therapies ("NRTs"), including gum, patches, and lozenges, from avoiding the surcharge at all, stating: "You cannot avoid the surcharge if you are trying to quit and using NRTs." This categorical exclusion discriminates against similarly situated participants who are attempting to satisfy the reasonable alternative standard and directly conflicts with § 300gg-4(j)(3)(D) and the Final Regulations, which forbids distinguishing among "similarly situated individuals" based on the method of their participation (i.e., which alternative standard they satisfy).

46. Defendants' notice deficiencies extend beyond omission because they actively mislead participants. Plan materials speak in permissive and discretionary terms, stating that participants "*may*" receive reimbursement after program completion, without guaranteeing reimbursement or clarifying that reimbursement is mandatory upon completion of a reasonable alternative standard. This equivocal phrasing mirrors the defects condemned by the Departments, which emphasized that wellness-program notices must make clear that *every* participant who completes the alternative is entitled to the full reward. Defendants' wording instead conveys that refunds are optional or subject to administrative approval, undermining participants' understanding of their statutory rights.

47. The combined effect of these design flaws and omissions is that most participants, including Plaintiffs, had no meaningful understanding of the various reasonable alternatives that were available to them, including that physician recommendations would be honored, or that completion of the program would entitle them to a full-year refund. Defendants' enrollment process and materials were structured to minimize awareness and limit redemptions, allowing Defendants to retain surcharge revenue while appearing to operate a compliant wellness program.

48. Had Defendants provided participants with meaningful notice of the availability of a reasonable alternative standard, including clear instructions, contact information, and a statement guaranteeing the full reward and physician accommodation in *all* Plan materials describing the surcharge, Plaintiffs and similarly situated individuals could have taken timely steps to avoid or recover the surcharge. Defendants' failure to do so deprived participants of the opportunity to exercise their rights under ERISA and directly caused financial harm to the Class.

49. By omitting required disclosures from their benefit guides and letters, by providing incomplete and misleading language in their Plan communications, by conditioning reimbursement on enrollment timing and administrative discretion, and by denying full-year reimbursement to participants who complete the program or successfully quit, Defendants have implemented a tobacco-surcharge scheme that is both discriminatory and unlawful. These systemic deficiencies violate ERISA and deprive Defendants of the protection afforded by ERISA's wellness-program safe harbor, and constitute independent breaches of fiduciary duty under 29 U.S.C. §§ 1104 and 1106. Allowing employers to exploit employees under the guise of "wellness" programs undermines ERISA's core purpose: to ensure that participants receive equal access to health coverage and are protected from discrimination based on health status. Defendants' conduct demonstrates how complexity, opacity, and administrative barriers can be used to conceal

participants' rights, generate unlawful revenue, and defeat the very protections Congress intended to guarantee

## III. DEFENDANTS' SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

50. Defendants administer the tobacco surcharge by designating which participants are subject to it and withholding the surcharge directly from participants' paychecks as a before-tax plan contribution, alongside regular medical-premium deductions. The Plan documents and enrollment materials make clear that participants who do not certify as tobacco-free will pay an additional $50 per paycheck "Tobacco Surcharge." These deductions are processed through the same payroll and benefits systems as other employee contributions supporting the Plan's group medical coverage and are therefore Plan assets within the meaning of 29 C.F.R. § 2510.3-102 once withheld.

51. Defendants represent in their 2024 Tobacco Surcharge FAQs that the surcharge amounts are "placed into a health-care claims account to cover additional health-care claims incurred by tobacco users." On its face, this statement purports to show that the surcharge benefits the Plan. In reality, however, because the cost of Plan coverage for each participant is fixed, every dollar of surcharge collected from employees directly reduces the amount Advocate is required to contribute from its own corporate assets to fund the Plan's claims. Rather than creating an additional stream of funding for participants' benefit, the surcharge merely shifts the employer's share of costs to employees, allowing Defendants to satisfy their funding obligation at a lower net cost.

52. There should have been three distinct funding streams supporting the Plan: (1) participants' regular premium contributions; (2) Advocate's contributions; and (3) the additional

tobacco-surcharge payments. But Defendants have used the third stream not to augment Plan resources but to offset their own required contributions. Because the overall cost of coverage remains unchanged, every surcharge dollar collected is one less dollar Defendants must supply. This structure produces no incremental benefit to the Plan and instead enriches Defendants by lowering their funding obligation.

53. Such conduct constitutes classic self-dealing under 29 U.S.C. § 1106(b)(1) because Defendants, acting as fiduciaries, have dealt with Plan assets in their own interest and for their own account. By retaining the economic benefit of the surcharge—or applying it to obligations that would otherwise be Defendants' own—the company diminished the Plan's funding stream and deprived participants of the full value of their contributions. Even if the funds were nominally deposited into a "claims account," Defendants controlled and benefited from their disposition, using them to defray employer-side expenses rather than to expand benefits or reduce participant premiums.

54. In doing so, Defendants failed to act solely in the interest of Plan participants and beneficiaries, as ERISA § 404(a)(1) requires. A fiduciary acting in good faith would have used surcharge proceeds to offset premiums for all participants, improve benefits, or strengthen Plan reserves. Instead, Defendants used the funds to subsidize their own cost of coverage, realizing a direct financial benefit at the expense of employees. Every dollar of surcharge revenue is a dollar that Defendants did not have to contribute to maintain the Plan.

55. By structuring the tobacco surcharge to operate as an employer cost-recovery mechanism rather than a bona fide "program of health promotion and disease prevention," Defendants engaged in prohibited self-dealing and breached their fiduciary duties of loyalty and prudence. The surcharge revenue was diverted to reduce Defendants' own plan-funding

obligations, generating a windfall to the company and depriving the Plan of the full contributions it should have received. These practices confirm that Defendants' wellness program was not designed to promote employee health but to generate unlawful savings through misrepresentation and misuse of participant-paid plan assets.

## CLASS DEFINITION AND ALLEGATIONS

56. Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

57. Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> **Tobacco Surcharge Class** (the "**Tobacco Class**")
> All individuals residing in the U.S. who paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendants.

58. Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

59. Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

60. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

61. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Class contains hundreds of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

62. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants' tobacco surcharge discriminates against participants based on a health status related factor;

b. Whether the smoking cessation program constitutes a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

c. Whether Defendants notified participants in all the plan materials required of the avenues by which participants could avoid the tobacco surcharge and obtain the "full reward";

d. Whether Defendants' wellness program violates ERISA and the applicable regulations.

e. Whether Defendants breached their fiduciary duties by collecting and retaining the tobacco surcharge;

f. Whether Defendants breached their fiduciary duties by failing to periodically review the terms of its Plan to ensure compliance with ERISA and applicable regulations;

g. Whether Advocate breached its fiduciary duty by failing to properly monitor and overlook the activities of the Plan's named fiduciaries to ensure their compliance with ERISA and the applicable regulations; and

h. The appropriate mechanisms to determine damages on a class-wide basis.

63. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

64. **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and members of the Class each participated in the Plan offered by Defendants and were harmed by Defendants' misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiffs will fairly and adequately

represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

65. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

66. Plaintiffs seek injunctive, declaratory, and equitable relief on grounds generally applicable to the entire Class. Unless the Class is certified, Defendants will be allowed to profit from their unfair and discriminatory practices, while Plaintiffs and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendants may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF ERISA'S WELLNESS PROGRAM RULES
### (Violation of 29 U.S.C. § 1182 & 42 U.S.C. § 300gg-4)

67. Plaintiffs re-allege and incorporates herein by reference all the allegations in paragraphs 1–65 of this Complaint.

68. Defendants improperly impose a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702 and the Public Health Service Act § 2705. By imposing discriminatory premiums of up to $1,300 annually on participants (and their dependents) who use tobacco, and by charging some participants more than others based on a health status-related factor, Defendants are violating ERISA § 702(b), 29 U.S.C. § 1182(b).

69. ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." *See* 29 U.S.C. § 1182(b). The only limited exception to this prohibition applies to wellness programs that qualify as "programs of health promotion and disease prevention" under the Departments' joint Final Regulations. Those regulations set forth specific criteria that *must* be satisfied for a premium differential based on tobacco use to be lawful. 29 C.F.R. § 2590.702(f)(4).

70. Defendants' tobacco-surcharge program fails to meet the regulatory requirements necessary to qualify as a lawful wellness program under ERISA. Plan communications that are actually sent to employees contain no notice of the availability of a reasonable alternative standards that ensure the full reward to all those similarly situated and no mention, to all participants paying the surcharge of their rights to have their personal physician's recommendations accommodated. The FAQs, the only document even referencing physician involvement, limit that right to individuals for whom quitting is medically inappropriate, misrepresenting the scope of the regulatory protection afforded to all participants. In addition, Defendants' materials condition relief on both enrollment in the six-month "Healthy Breathe" program and achievement of tobacco-free status, falsely suggesting that participants must actually quit smoking to qualify for relief. These documents further mislead participants by describing reimbursement as available only for "the six months of program participation" and by promising merely that surcharges "may be reimbursed," language that is both permissive and incomplete. Collectively, these omissions

and misstatements conceal the required "full reward" rule and imply that cessation, rather than participation in a reasonable alternative, is the only path to avoid the surcharge.

71. Because Defendants failed to provide clear, consistent, and complete notice of the reasonable alternative standard in ***all*** Plan materials describing the surcharge, and because they imposed additional conditions, such as timing-based reimbursement caps, prospective-only relief for many, and misleading language that requires cessation or physician pre-approval, Defendants' tobacco-surcharge program is not a bona fide "program of health promotion and disease prevention." Rather, it is a subterfuge for discrimination based on a health factor, in violation of ERISA § 702(b), 29 U.S.C. § 1182(b), and PHSA § 2705. By failing to satisfy the full reward and notice requirements of 42 U.S.C. § 300gg-4(j)(3), and 45 C.F.R. § 146.121(f), Defendants have implemented a plan that penalizes participants for their health status instead of promoting genuine health outcomes.

72. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1182(b) is a provision of ERISA that Plaintiffs and Class members may enforce pursuant to 29 U.S.C. § 1132(a)(3).

73. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress violations of ERISA's anti-discrimination provisions outlined in § 1182(b), including but not limited to the relief set forth below in the Prayer for Relief.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

74. Plaintiffs re-allege and incorporate herein by reference the prior allegations in paragraphs 1–65 of this Complaint.

75. ERISA requires a fiduciary to act "solely in the interest of participants and beneficiaries," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in its own interest. 29 U.S.C. §§ 1104(a)(1), 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to maintain "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). In this case, Defendants' fiduciary obligations included the continuing duty to monitor their tobacco-surcharge program for compliance with federal law, to correct known deficiencies, and to ensure that participants received complete and accurate information about their rights, including their entitlement to a reasonable alternative standard and the same full reward to all similarly situated individuals once that standard was satisfied.

76. Instead of loyally and prudently acting in the best interests of Plan participants, the Compensation Committee used Plan assets to benefit Advocate at the expense of the Plan and its participants. They unlawfully withheld millions of dollars in tobacco surcharges from participants' paychecks and then used those funds to offset Advocate's own contributions to the Plan. The FAQs confirm that the surcharge funds are "placed into a health-care claims account to cover additional health-care claims incurred by tobacco users." Because the total cost of coverage for each participant is fixed, every dollar of surcharge revenue directly reduces the employer's contribution dollar-for-dollar. The Compensation Committee thereby transformed what should have been additional Plan assets into a mechanism that reduced the employer's funding obligation while denying participants the full reward they are guaranteed under ERISA and the Final Regulations.

77. Each year, the Compensation Committee exercised discretionary authority and control over the management and administration of the Plan and its wellness programs within the meaning of 29 U.S.C. §§ 1002(16), 1002(21). The Compensation Committee determined whether to impose the surcharge, how to administer reimbursements, and how to handle the surcharge proceeds. It also decided not to offer reasonable alternative standards that would have enabled "all similarly situated individuals" to receive the same full reward for the entire plan year. By deciding to funnel surcharge funds into the employer's claims account while limiting reimbursements to a six-month period and prospective relief only, the Compensation Committee ensured that participants, not the employer, bore the Plan's costs.

78. The Compensation Committee controlled and disseminated Plan Communications including, tobacco-surcharge letters, emails, and FAQs describing the premium differential but failed to include notice of the reasonable alternative standard or notice to all participants' to have their physicians' recommendations accommodated. The Compensation Committee also failed to conduct periodic, prudent reviews of its wellness program and related communications to ensure compliance with ERISA. Instead, it allowed a structurally defective program—one that imposed timing-based reimbursement limits, denied retroactive relief, and excluded similarly situated individuals from the full reward—to persist year after year, despite its discriminatory effect and clear inconsistency with the full reward rule.

79. The Compensation Committee further breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by permitting surcharge funds to reduce Advocate's own contribution obligations and by maintaining a program that withheld full reimbursement from participants who completed the reasonable alternative standard. It also failed to notify participants of their rights under the Final

Regulations or to ensure that Plan documents contained the disclosures required by 29 C.F.R. § 2590.702(f)(4)(v). These omissions and misrepresentations are incompatible with ERISA's fiduciary mandates of loyalty, prudence, and adherence to governing law.

80. ERISA also imposes on appointing fiduciaries (i.e., Advocate) the duty to monitor and supervise the actions of those administering the Plan (i.e., the Compensation Committee). By allowing administrators and benefits staff to implement and maintain a non-compliant wellness program that violated ERISA's notice and full-reward requirements, Advocate breached its duty to monitor. Advocate failed to review the program's design, the disposition of surcharge proceeds, and the accuracy of participant communications, despite its obligation to ensure the Plan's ongoing compliance with federal law.

81. As a result of these breaches, Advocate was unjustly enriched at the expense of the Plan and its participants. By deducting surcharges directly from employees' paychecks without administering a compliant wellness program or providing full-year reimbursement, the Compensation Committee secured financial savings for the employer while shifting costs to participants. The structure of the program ensured that not all "similarly situated individuals" could receive the full reward, and participants were deprived of clear notice of the reasonable alternative standard. In effect, Defendants converted employee contributions (i.e., Plan assets) into a source of corporate savings, in violation of 29 U.S.C. § 1104(a)(1)(A).

82. By withholding unlawful surcharges and using those funds to offset Advocate's financial obligations, the Compensation Committee caused the Plan to engage in transactions constituting a direct or indirect transfer of Plan assets for the benefit of a party-in-interest—namely, Advocate—in violation of 29 U.S.C. § 1106(a)(1). Advocate is a party-in-interest under

29 U.S.C. § 1002(14) because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's administration and finances.

83. By retaining and applying the tobacco-surcharge amounts to its own benefit, Advocate increased its corporate assets and reduced the funds it was otherwise obligated to contribute to the Plan. Such conduct constitutes self-dealing prohibited by ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). The surcharges should have supplemented, not displaced, employer contributions. Instead, the Compensation Committee's actions deprived participants of the full reward and used participant-paid Plan assets to subsidize Advocate's costs, leaving the Plan underfunded relative to what it should have received.

84. Defendants' breached their fiduciary duties by: (a) failing to disclose material information about the wellness program, depriving participants of the ability to make informed choices; (b) administering a wellness program that violated ERISA's anti-discrimination provisions and the "full reward" rule; (c) acting on behalf of a party whose interests were adverse to those of the Plan and its participants, in violation of ERISA § 406(b)(2); and (d) failing to prudently review the Plan's terms, surcharge funding, and participant communications to ensure compliance with ERISA's requirements. These breaches caused Plaintiffs and the Class to incur unlawful surcharges and transferred Plan costs to participants. Had Defendants complied with their fiduciary duties, they would have implemented a compliant program, ensured that surcharge proceeds were treated as additional Plan assets, and guaranteed full-year reimbursement to all participants who completed the reasonable alternative standard.

85. As a direct and proximate result of these fiduciary breaches, Plaintiffs and members of the Class lost millions of dollars in unlawful surcharges deducted from their paychecks and were deprived of the full rewards and protections guaranteed to them under ERISA

86. Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Plaintiffs are also permitted, in the alternative, to bring a claim under 29 U.S.C. § 1132(a)(3). Pursuant to 29 U.S.C. § 1109, Defendant is liable to: make good to the Plan all losses resulting from their breaches; disgorge unjust enrichment and ill-gotten profits; and restore to the Plan, or to a constructive trust for the Plan, all profits acquired through their violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharge imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendants to reimburse all persons who paid the unlawful and discriminatory surcharge within the applicable limitations period;

D. A declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting an unreasonably restrictive wellness program that violated ERISA's anti-discrimination provisions, violated ERISA's disclosure provisions, and for failing to adequately monitor the actions of the Plan's fiduciaries and the wellness program to ensure the terms thereof complied with ERISA and the applicable regulations;

E. An Order requiring Defendants to provide an accounting of all prior payments of the surcharge under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendants remit all previously collected surcharge;

G. Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all amounts Defendants collected as unlawful surcharges;

I. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of its collection of the unlawful and discriminatory tobacco surcharge;

J. Relief to the Plan from Defendants for their violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the wellness program and tobacco surcharge are unlawful; restoration of losses to the Plan and its participants caused by Defendants' fiduciary violations; disgorgement of any benefits and profits Defendants received or enjoyed from the use of Plan assets or from their violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendants to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

L. An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated: October 22, 2025

Respectfully submitted,

**SIRI & GLIMSTAD LLP**

/s/ *Oren Faircloth*
Oren Faircloth (*pro hac vice*)
Mason A. Barney
William Payne (*pro hac vice* forthcoming)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: ofaircloth@sirillp.com
E: mbarney@sirillp.com
E: wpayne@sirillp.com

*Attorneys for Plaintiffs and the Proposed Class*